## SIMON ROTHENBERGER, AS ADMINISTRATOR OF THE ESTATE OF PAUL ROTHENBERGER v. POWERS FUEL, FEED, TRANSFER & STORAGE COMPANY.[1]

### February 4, 1921.

### No. 22,116.

**Death by wrongful act — question for jury.**

1. Where a transfer company left a skid 24 feet long and 4 feet wide, weighing 500 pounds, resting on its edge in a public alley where small children were accustomed to play, without any support to prevent its toppling over, it is a question for the jury as to whether such skid so placed constituted a dangerous obstacle.

**Charge to jury.**

2. Instructions considered and *held* proper under the proofs in the case.

**Damages not excessive.**

3. A verdict for $2,500 for causing the death of a boy 8 years of age through the negligence of the defendant, *held* not excessive.

**Admissible evidence.**

4. Rulings of the trial court upon the admissibility of evidence considered and *held* not reversible error.

Action in the district court for Hennepin county to recover $7,500 for the death of plaintiff's intestate. The answer alleged negligence on the part of decedent. The case was tried before Leary, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $2,500. From an order denying its

[1] Reported in 181 N. W. 641.
148 M.—14.

motion for judgment notwithstanding the verdict or for a new trial, defendant appealed.   Affirmed.

*Adolph E. L. Johnson,* for appellant.

*Selover, Schultz & Mansfield,* for respondent.

QUINN, J.

This is an action to recover for the death of plaintiff's intestate, alleged to have been the result of the appellant's negligence.   Plaintiff recovered a verdict.   From an order denying its motion for judgment or a new trial this appeal was taken.

The appellant is engaged in the general transfer business in the city of Minneapolis.   Its place of business is at 611 West Lake street, where it has a two-story building with sheds, warehouses, a backyard and a barn.   The east side of one of the buildings abuts on an alley.   The alley extends through the block and is used by the public.   There is a telephone pole in the alley less than a foot from the side of the building.   The appellant kept for use in its transfer business in moving pianos and other heavy furniture what is referred to as a "skid."   This skid or appliance was approximately 24 feet long and 4 feet wide.   It resembled a ladder in its make-up.   It consisted of two sidepieces or timbers, 4 by 6 inches, placed 3½ feet apart, parallel, joined together by wood crosspieces 1½ by 6 inches.   These crosspieces were placed about 3 feet apart and projected about 3 inches over the outer edge of the sidepieces.   The skid as thus constructed weighed about 500 pounds.   It had been the custom of appellant for some 3 years prior to the accident to keep this appliance, when not in use, in the alley between the telephone pole and the building.   At the time of the accident, the skid, practically speaking, was in its usual position on its edge by the side of the building, except that it was not pushed back lengthwise between the pole and the building.   It had no support to prevent its tipping over sideways.   The plaintiff's residence was in the same block, his backyard abutting on the same alley.   The children of the neighborhood had been accustomed to play about the skid for a long time.   They would climb on top of it to see whether they could walk its entire length without touching the wall or falling off, and played upon it in many other

ways. There is testimony throughout the record tending to support the foregoing.

About 5 o'clock in the afternoon of April 14, 1919, Paul Rothenberger, the deceased, a boy of 8 years, and Lee Canterbury, 7 years of age, were playing in plaintiff's backyard, when Paul's grandfather requested him to go and get an evening paper. The boys started down the alley. As they approached the point where the skid was Paul said to Lee: "I will show you a wonderful trick," and he got onto the skid, his feet on the bottom sidepiece and his hands on the upper part of the crosspieces and attempted to walk sideways on the skid when it tipped over, striking him across the chest, thereby injuring him so that he died within an hour or so.

Plaintiff alleges in the complaint, in substance, that the defendant, through its servants, carelessly, negligently and wrongfully placed an enormous skid (describing it) along the side of the said building, resting on its edge in the alley, not braced or connected to the building in any way, so that a very slight weight or pressure thereon would cause the same to fall; that defendant had negligently permitted it to remain in said alley as an inducement for small boys to play thereon; and that deceased, on coming to the point where the same was placed, stepped, without negligence on his part, on the sidepiece nearest the ground when the skid tumbled over on him, crushing his chest and causing his death.

In considering this case in all of its bearings, we think the gravamen of the charge of negligence is that the skid was left in such a position in the alley that a slight application of force would case it to topple, thereby rendering it very dangerous to passers by and especially to children playing thereabout.

We pass directly to the main question raised upon this appeal, namely, whether the court erred, at the close of the testimony, in refusing to direct a verdict in favor of appellant on the ground that there was no evidence to show a lack of ordinary care, or to show negligence on the part of the appellant. The simple facts to be considered in this connection, are that a child of 8 years of age was passing along the public alley; he undertook to show his companion a wonderful trick; he stepped upon the lower sidepiece of the skid above described and with his hands

on the upper part thereof undertook to walk sideways thereon when the skid tipped over onto him, thereby causing his death. It is disputed that it had been the appellant's custom to leave the skid, when not in use, in this alley, resting on edge, with one end thereof pushed back of a telephone pole. In this position it could not be easily tipped over. On the day in question the skid was resting on its edge, that is, on the lower ends of the crosspieces, which projected 3 inches below the lower side-piece, without any stay to prevent its toppling. The contention is that there can be no liability under the evidence as shown by the record, on the theory of the doctrine of "attractive nuisances" as laid down in the line of cases known as "turntable cases." These cases are referred to in the briefs at considerable length. We do not, however, deem it necessary to consider that line of cases in disposing of this appeal. This is not a case of a landowner putting an attractive, but dangerous, instrumentality on his own premises and leaving it unguarded. It is a case of an owner placing a dangerous obstacle in a public alley and leaving it unguarded.

A public alley is not a store room for dangerous appliances. Appellant doubtless had a right to leave the skid in the alley temporarily in the transaction of its business, but it had no right to permanently store it there and allow it to rest upon its edge, so that it might be tipped over in such way as to be liable to injure a traveler. The fact that the boy had stopped for a moment, following a natural childish inclination to play, does not of itself relieve appellant from liability. It appears that the children of the locality were accustomed to play about the alley to such an extent that appellant could hardly fail to have known of the fact. The children had a right in the alley. It is a well-known fact that children are liable to be in the public streets and alleys and to tarry and play, or meddle with attractive things left about. This is a fact which all persons must be mindful of and they should take care not to negligently leave upon the public ways dangerous appliances calculated to arouse the curiosity of the youthful mind. We think there was ample proof in the case to sustain the finding of the jury that the act of leaving the skid in the alley in the position it was in at the time of the accident was actionable negligence, and that the result which followed might reasonably have been anticipated by an ordinarily prudent per-

son under the circumstances. The appliance, it must be remembered, was in a public alley. Busse v. Rogers, 120 Wis. 443, 98 N. W. 219, 64 L.R.A. 183; Meibus v. Dodge, 38 Wis. 300, 20 Am. Rep. 6; Kruis v Grand Rapids, G. H. & M. R. Co. 190 Mich. 105, 155 N. W. 742; Jaworski v. Detroit Edison Co. 210 Mich. 317, 178 N. W. 71; Tozer v. Michigan Cent. R. Co. 195 Mich. 662, 162 N. W. 280. In the last case cited, it was said as illustrating the rule involved:

"If a man does an act and he knows, or by the exercise of reasonable foresight should have known, that in the event of a subsequent occurrence, which is not unlikely to happen, injury may result from his act, and such subsequent occurrence does happen and injury does result, the act committed is negligent, and will be deemed to be the proximate cause of the injury."

The trial court submitted the case to the jury along the lines above indicated, and in so doing said, in part:

"Plaintiff claims that this slide was a dangerous instrumentality and furthermore that it was of a nature which made it attractive to children playing around that neighborhood and who went up and down that alley; the plaintiff furthermore claims that it was known to this defendant that this slide was played upon by these children frequently and that as a matter of fact under these circumstances reasonable care should have been used by the defendant company in making this safe so injury would not be suffered by the children who lived in that neighborhood and who might play upon this particular dangerous instrumentality. Now, the plaintiff claims such reasonable care was not used and that the deceased, this child, came along in company with another boy, a little boy by the name of Lee Canterbury, upon the 14th day of April, 1919, somewhere in the afternoon between four and five o'clock, the testimony differs somewhat, you will remember what the witnesses stated in that regard as to the exact time when this is said to have happened. The plaintiff claims that this boy who suffered injury had got upon the skid and was playing upon this skid and at that time it was improperly fixed or placed so it was dangerous. That reasonable care had not been used to properly fix it and while this boy was upon this skid it fell over on him and he received injuries at that time which resulted in his death."

We think the instruction proper in the light of all the facts as they appear from the record. The testimony made a question for the jury as to whether the skid, in the position in which it was left, was a dangerous appliance and whether the appellant was guilty of actionable negligence.

There are other errors alleged, including rulings upon the admissibility of testimony and the amount of the verdict, which we have considered and we are of the opinion that there is no reversible error.

Affirmed.